## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## THE GREAT ATLANTIC & PACIFIC TEA CO. V. PEARL ROBERTSON

April 21, 1978.

Record No. 770935.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, J.J.

*James W. Jennings, Jr.* (*Woods, Rogers, Muse, Walker & Thornton,* on brief) for appellant.

*James W. Ragan* (*Lawrence C. Musgrove; Crush, Moran & Ward,* on brief) for appellee.

HARMAN, J., delivered the opinion of the Court.

The Industrial Commission of Virginia (Commission) awarded Pearl Robertson (employee or Robertson) total disability benefits for an occupational disease, meat wrappers asthma, which she contracted while employed by the Great Atlantic & Pacific Tea Co. (A & P or employer). The narrow question presented here is whether there is credible evidence to support the Commission's finding that Robertson is continuing to suffer total disability as a result of this occupational disease.

Medical authorities agree that meat wrappers asthma is a bronchial reaction or pulmonary insufficiency resulting from exposure to the fumes generated when a "hot" wire cuts the plastic wrapping used by butchers to package cuts of meat for display and sale. The active agent in the wrapping material is polyvinyl chloride. Some, but not all, authorities believe that price labeling ink is a factor in causing the disease. The authorities appear to agree that the disease is "reversible early, chronic with continued exposure."

Robertson was employed by A & P as a meat wrapper for approximately 24 years. On March 5, 1976, she was hospitalized and treated for meat wrappers asthma. Robertson's symptoms subsided so she was released from the hospital on March 11 and allowed to return to work on March 18. Shortly after she returned to work, Robertson again suffered the coughing, wheezing and shortness of breath which are symptoms of the disease. She was readmitted to the hospital for treatment on March 26 and was discharged as improved on April 3. Robertson testified at the hearing before Commissioner Joyner on November 16, 1976, that she was still unable to return to work.

The employer does not challenge the Commission's finding that Robertson contracted an occupational disease, as defined in Code § 65.1-46, while employed by A & P and that she was

entitled to receive compensation and other benefits for a "certain period of time." It argues, however, that there is no credible evidence to support the Commission's finding that Robertson continues to suffer total disability from an occupational disease.

■ Upon appeal the Commission's finding of fact are conclusive and binding upon us if supported by credible evidence. Code § 65.1-98. *Shawley* v. *Shea-Ball,* 216 Va. 442, 219 S.E.2d 849 (1975). If, however, there is no credible evidence on which the Commission's findings of fact are based, its findings are not binding and the question presented becomes one of law. *Conner* v. *Bragg,* 203 Va. 204, 123 S.E.2d 393 (1962).

■ The medical evidence consists of the written reports from four physicians and the deposition of one of those physicians. Two of the physicians, Dr. James E. Wheless and Dr. Gary E. Glontz, jointly practice internal medicine. They saw Robertson initially and arranged for her hospital admissions. Dr. Alexander McCausland, a specialist in allergies and immunology, was called in by them as a consultant and confirmed the diagnosis by the internists that Robertson was suffering from meat wrappers asthma. At the employer's request, Dr. Edward S. Ray of the Medical College of Virginia saw Robertson on two occasions to evaluate her condition.

Dr. Wheless, by his report of July 21, 1976, was of the opinion that Robertson was totally and permanently disabled as a result of meat wrappers asthma. In a supplement to his report, on November 29, 1976, Dr. Wheless said he would "professionally defer to any decision [of] Dr. McCausland . . . regarding the cause of Mrs. Robertson's problem." Dr. Wheless, responding to a request to Dr. Glontz for a report, stated that Dr. Glontz would likewise defer to Dr. McCausland's opinion on the cause of Mrs. Robertson's problem.

Dr. Ray first saw and examined the employee on August 18, 1976. Reporting on this examination Dr. Ray said:

"It is my opinion that Mrs. Robertson is hypersensitive to the fumes and gases generated by the mechanism of cutting and sealing of the plastic wrappings of meat. She developed severe spasms of her bronchi as the result of exposure to these fumes and gases that required hospitalization on two occasions in March, 1976. I agree that she should have no further exposure to these agents.

"I also believe that this experience has resulted in the bronchi of Mrs. Robertson becoming more sensitive to other air pollutants and that she should continue to avoid all air pollutants as much as possible. It is likely that this hypersensitivity to air pollutants will disappear over the next few months, but until this occurs, I consider her totally disabled as the result of her employment as a meatwrapper."

Dr. Ray examined Mrs. Robertson on November 17. Regarding this examination, he states:

"It remains my opinion that Mrs. Robertson has episodes of bronchospasm and that her bronchi are hypersensitive to air pollutants. I would suggest that she be given work beginning 12-1-76, in a working environment free of air pollutants (smoke, fumes, dust, odors, etc.) and that required light physical activity. If her wheezing increases, she should be retired. . . .

"Mrs. Robertson has been seen in consultation by Dr. Alexander McCausland of Roanoke who is a specialist in allergies and hypersensitive reactions of the bronchi. I would suggest that you obtain his opinion in regard to the relationships of Mrs. Robertson's exposure to the gases as a meatwrapper and her persistent symptoms of cough and intermittent wheezing."

The deposition of Dr. Alexander McCausland was taken on December 6, 1976, by leave of the Commission, and filed as a part of the record. As we noted earlier, Dr. McCausland confirmed the original diagnosis of meat wrappers asthma made by Drs. Wheless and Glontz while Robertson was hospitalized. He agreed that the disease was reversible early and could become chronic with continued exposure. On the basis of Robertson's history, which showed she suffered from hay fever and other allergies as early as 1954, Dr. McCausland was of the opinion that her difficulty arising from exposure to polyvinyl chloride was "transient [,] because [when] she got out of it, she got all right." When Dr. McCausland saw the employee on April 21, 1976, "[s]he wasn't having too much trouble," so he concluded that she was no longer suffering from meat wrappers asthma but from her other allergies. At the time he testified, Dr. McCausland was still treating the employee for dust allergy.

Referring to Robertson's reaction to oven cleaners, dust and smoke, Dr. McCausland believed "they are separate things except that they may have made her a little more susceptible [in] the meat wrapper job. . . ." When asked if Robertson's length of exposure as a meat wrapper "would have made her chronic" the physician responded:

"I really don't know, I don't know what [the medical authorities] consider chronic in this. I don't have enough information to know that.

". . . [M]y idea of the word 'chronic' would be . . . a person who kept on wheezing and didn't quit but that is purely my opinion. . . ."

In finding that Robertson was totally disabled, the Commission obviously accepted Dr. Ray's opinion, based upon his August 18 examination, that Robertson suffered total disability as a result of her occupational disease. While the employer argues that Dr. Ray, in a later report, deferred to Dr. McCausland's view that Robertson's work-related asthma had "cleared up", this was not the effect of Dr. Ray's later report; he merely suggested that an opinion be obtained from Dr. McCausland. And, in any event, the Commission was free to accept Dr. Ray's opinion rather than Dr. McCausland's views. Because Dr. Ray's opinion constitutes credible evidence supporting the Commission's finding that Robertson was totally disabled from an occupational disease, we will affirm the award of the Commission.

*Affirmed.*