**BORDEN, INC., Appellant
(Defendant Below),**

v.

**Mona CYPHERS, Appellee
(Plaintiff Below).**

No. 4–984A248.

Court of Appeals of Indiana,
Third District.

Dec. 23, 1985.

Rehearing Denied Feb. 14, 1986.

Ralph A. Cohen, Mary Nold Larimore, Ice, Miller, Donadio & Ryan, Indianapolis, John Dames, Sidley & Austin, Chicago, Ill., for appellant.

Thomas L. Hulse, Miller, Hulse, Lacey, Hardacre, Austin & Chappell, Patrick J. Cunningham, Anderson, for appellee.

HOFFMAN, Judge.

Defendant-appellant Borden, Inc., (Borden) appeals a jury verdict awarding plaintiff-appellee Mona Cyphers (Cyphers) a $200,000.00 judgment. Cyphers brought suit against Borden alleging that she contracted chronic obstructive lung disease, referred to as "meat wrappers asthma," [1] as a result of her exposure to fumes emitted from the hot wire cutting of Borden's polyvinyl chloride (pvc) meat wrapping film during her career as a meat wrapper.

The evidence relevant to this appeal discloses that Cyphers was employed as a full-time meat wrapper at Marsh Supermarket in Elwood, Indiana continuously from July 1958 to March 1979, when she became seriously ill. At least ninety per cent of Cyphers' work day consisted of wrapping packages of meat with the pvc meat wrapping film. As each package was wrapped, the film was cut by a hot wire, releasing hydrogen chloride and other decomposition gases.

In 1973, 1974 and 1975, Borden issued a series of three letters directed to purchasers of pvc meat wrap. The letters contained recommendations that the temperature of hot wire cutting devices not exceed 300 degrees fahrenheit, and that persons with a history of respiratory problems not be assigned meat wrapping duties. Neither Cyphers nor the purchasing agent at Marsh, who ordered the meat wrap, ever saw the letters. Further, no warnings were placed on the boxes in which the film was packaged.

The hot wire temperature of the machine most often used by Cyphers tested at 700 degrees fahrenheit. At the increased temperature, the pvc fumes contain a greater concentration of harmful emissions. The higher temperatures, coupled with Cyphers' history of bronchitis and pneumonia, placed her in the category of those most likely to be affected by the fumes.

After having experienced shortness of breath, Cyphers was taken to Ball Memorial Hospital in Muncie where she was seen by Dr. Anthony Dowell. Dr. Dowell, a

---

1. For other cases on "meat wrappers asthma," see *A.J. Bayless Markets v. Industrial Comm'n* (1982), 134 Az. 243, 246, 655 P.2d 363; *Hunter v. Industrial Comm'n* (1981), 130 Az. 59, 633 P.2d 1052; *Matter of the Compensation of Bracke* (1981), 51 Or.App. 627, 626 P.2d 918; *Schiele v. Hobart Corp.* (1978), 284 Or. 483, 587 P.2d 1010; *Great Atlantic & Pacific Tea Co. v. Robertson* (1978), 218 Va. 1051, 243 S.E.2d 234.

pulmonary specialist diagnosed Cyphers as having chronic obstructive lung disease. Her condition had not improved significantly at the time of trial, four years later.

At trial after the close of Cyphers' case, Borden moved for a directed verdict which was granted as to negligence and punitive damages.[2] As noted earlier, trial resulted in an award in favor of Cyphers against Borden.

Borden raises two issues on appeal. As restated, the issues are:

(1) whether the jury's verdict was contrary to law and supported by sufficient evidence; and

(2) whether the trial court erred in permitting Dr. Eric Block, a chemist, to testify as to the physical effects of some toxic chemicals.

On appeal, this Court will neither weigh the evidence nor assess the credibility of witnesses. *Stubbs v. Hook* (1984), Ind. App., 467 N.E.2d 29. Only the evidence most favorable to the judgment along with any reasonable inferences drawn therefrom will be considered. *Extra Energy Coal Co. v. Diamond Energy* (1984), Ind.App., 467 N.E.2d 439.

■ The present case was tried under the Product Liability Statute,[3] and premised on a failure by Borden to warn of the dangerous propensities of its pvc meat wrapping film when heated by a hot wire. Under its first allegation of error, Borden contends that an action based upon failure to warn requires a finding of negligence, even though the Product Liability Statute is based upon strict liability.[4] Therefore, Borden argues, the trial court's order finding no negligence determined the failure to warn issue.

Based upon the Restatement (Second) of Torts § 402A, which was expressly adopted in Indiana, our Supreme Court in *Ayr-Way Stores, Inc. et al. v. Chitwood* (1973), 261 Ind. 86, 300 N.E.2d 335, noted five indicia

establishing a *prima facie* case in strict liability. A plaintiff who demonstrates "(1) a purchase of (2) a defective product from (3) a seller engaged in the business of selling such a product (4) and the product reached him without substantial change in its condition and (5) that the product caused physical harm because of the defect," has shown a *prima facie* case in strict liability. *Chitwood, supra*, 261 Ind. at 93, 300 N.E.2d at 340.

Borden directs our attention to *Ortho Pharmaceutical v. Chapman* (1979), 180 Ind.App. 33, 388 N.E.2d 541. The plaintiff in *Ortho* sought recovery based upon the failure of one who manufactured contraceptive pills to adequately warn of possible thrombophlebitis in some users. This Court discussed an exception to strict liability for "unavoidably unsafe products" found within Comment K to § 402A. *Ortho, supra*, 180 Ind.App. at 38, 388 N.E.2d at 545, 546. Comment K suggests a negligence standard for products which, for public policy reasons, should be marketed even though known dangers exist; as in the case of contraceptive pills, vaccines and other prescription drugs. These products, when correctly manufactured and accompanied by proper warnings should not be considered defective or unreasonably dangerous. *See*, Comment K to Restatement (Second) of Torts § 402A. Whether the manufacturer knows of the potential dangers and then issues warnings sufficient to allow the user to make an informed judgment is the focus in such cases.

In the present case, whether Borden had knowledge of the dangerous propensities of the pvc film is not in dispute. Moreover, the film does not fall into the category of products to which Comment K is directed. Thus, the discussion on negligence in *Ortho* is inapposite to the instant proceedings.

■ When a manufacturer knows of potential harm, yet fails to issue warnings to

---

2. The jury returned a judgment for other defendants who joined in the motion, but who are not parties to this appeal.

3. IND.CODE § 33–1–1.5–1 through § 33–1–1.5–8.

4. IND. CODE § 33–1–1.5–3.

users, recovery on a strict liability theory is appropriate if sufficient evidence establishes the existence of the criteria set out in *Chitwood*. *See, Reliance Insurance Co. v. Al E. & C. Ltd.* (7th Cir.1976), 539 F.2d 1101 (applying Indiana law and allowing strict liability recovery for failure to warn). At trial Cyphers presented evidence as to each element.

Jim Beedle, the Marsh purchasing agent in charge of ordering meat wrap from 1970 through 1979, testified that he purchased Borden pvc film for the Elwood store where Cyphers was employed. Beedle further testified that the boxes of film arrived at Marsh sealed and unaltered. He stated unequivocally that he had never seen any warnings regarding Borden's meat wrap.

Dr. Scea, Cyphers' general care physician, and Dr. Dowell, her pulmonary specialist, both testified that the pvc fumes were primarily responsible for Cyphers' condition. Dr. Dowell stated that although Cyphers smoked approximately one package of cigarettes per day for sixteen years, he did not believe that her smoking history would warrant the degree of impairment suffered by Cyphers.

Cyphers testified that she never received any warnings about use of the film and that neither the boxes in which the film was shipped, nor the rolls of meat wrap contained any warnings. She had noticed a "sickening" odor, various amounts of smoke, a brown substance on her meat smock, and an accumulation of dirt and grease on her hair and her silver necklace while she worked. However, Cyphers was not aware of any health hazards posed by use of the film until she became "acutely ill," as diagnosed by Dr. Dowell.

This representative evidence, and other corroborative evidence adduced at trial, satisfy the *Chitwood* elements of a purchase

from a seller, without substantial change and that the product caused physical harm because of a defect.[5]

■ Next, Borden questions the trial court's ruling which qualified Dr. Eric Block, a chemist, to testify as to some of the physical effects of decomposition products in pvc fumes upon humans. The court based its ruling on Dr. Block's years of research with chemicals in general, and the pvc film specifically. Additionally, as a chemistry professor, Dr. Block's teaching duties include responsibility for the safety of his students in the laboratory where toxic chemicals are in use.

Expert testimony is admissible when:
"(1) the subject of the inference to be drawn from the facts must be so distinctly related to some science, profession, business, or occupation as to be beyond the ken of laymen; and (2) the witness must have sufficient skill, knowledge, or experience in that field so as to make it appear that his opinion or inference will probably aid the trier in his search for the truth."

*State v. Maudlin* (1981), Ind.App., 416 N.E.2d 477, 481.

With regard to reviewing a court's qualification of an expert witness, this Court noted that,

"[t]he qualifications of a witness to testify as an expert will be set aside only where there is a manifest abuse of discretion. It is for the trial court to determine whether a witness exhibits such a degree of knowledge gained from experiments, observations, standard books, or other reliable sources, as to make it appear that his opinion is of some value. *Travelers Indemnity Co. v. Armstrong*, (1979) Ind.App., 384 N.E.2d 607; *City of*

---

5. Commentators have noted the proof difficulties inherent in the "defective product" requirement in a failure to warn case. When a product is manufactured correctly yet still causes injury, the defective product condition may be supplied because the product is unreasonably dangerous or because of the lack of warnings. *Ortho, supra,* 180 Ind.App. 38, 388 N.E.2d at 545

(wherein theories found in Wade, *Strict Tort Liability of Manufacturers,* 19 S.W.L.J. 5, 14–15 (1965) and 2 *L. Frumer & M. Friedman, Products Liability* § 16A[4][e] (1967) are quoted). Also noteworthy is the fact that the jury was properly instructed that it must find the product unreasonably dangerous for Cyphers to recover.

*Bloomington v. Holt,* (1977), 172 Ind. App. 650, 361 N.E.2d 1211.

This specific issue was decided adversely to the State in *Indianapolis Union Railway v. Walker,* (1974) 162 Ind.App. 166, 318 N.E.2d 578. There we affirmed the trial court's decision to permit a professor of psychology at the University of Washington, and a specialist in the field of neuro-psychology, to testify as an expert witness in an Indiana court as to brain damage, though he was neither a neuro-surgeon nor even a licensed medical doctor, in Indiana or elsewhere. This court relied upon his experience and academic attainments as a basis for his qualifications."

416 N.E.2d at 481.

The testimony by Dr. Block concerned common physical effects and did not constitute a diagnosis of Cyphers, which was presented through the testimony of her attending physicians. In light of Dr. Block's extensive research and standard for reviewing the admissibility of such expert testimony, the trial court did not err.

The judgment is affirmed.

STATON, P.J., concurs; GARRARD, J., concurs in result.