Timothy C. CLARK, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 02S00–8810–CR–859.

Supreme Court of Indiana.

Oct. 30, 1990.

Donald C. Swanson, Jr., Swanson & Campbell, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Accused of setting an apartment fire that killed a young woman, appellant Timothy Clark was tried to a jury and convicted of arson, a class A felony, Ind.Code § 35–43–1–1 (West 1986), and felony murder, Ind.Code § 35–42–1–1(2) (West 1986). The judge sentenced Clark to forty years.

In this direct appeal, Clark raises three issues:

I. Whether the trial court erred in admitting into evidence items of clothing seized by arson investigators from the backseat of Clark's car.

II. Whether the trial court erred in refusing to allow the defendant's expert witness to give his opinion regarding the cause of Clark's burns.

III. Whether there was sufficient evidence to sustain the arson and felony murder convictions.

### Facts

The evidence most favorable to the jury's verdict shows that a fire erupted at 12:30 on the morning of July 13, 1987, in an entryway at Wood Creek Apartments in Fort Wayne, Indiana. The fire broke out after one gallon of gasoline was splashed inside the entryway, and lit. Although many of the apartment residents were injured, all were able to escape the fire with their lives except for a 26–year–old school teacher, Cheryl Cureton. She died in her bed from smoke inhalation.

Clark had been out drinking beer at a festival with his roommate on the evening of July 12, 1987. They left the festival and drove home, then left immediately to buy some fast food. They took their food to the St. Joseph Township Fire Department, where both worked as volunteer firemen, and ate it in the parking lot of the station. Clark went inside the station to retrieve some fire equipment, then drove back home. Clark dropped his roommate off at home, then drove off alone.

An apartment resident who lived near the entryway where the fire started testified that a man similar in appearance to Clark knocked on her door shortly before the fire began. When she answered the door the man said that he had the wrong apartment. The resident then shut her door. She testified that the man appeared to be drunk. He smelled of alcohol, had red eyes and swayed as he stood in her doorway.

After the fire erupted, another resident, who knew Clark through her work as a volunteer paramedic for St. Joseph Township, heard a man pounding on doors yelling, "Fire, fire, apartment fire." Although she did not immediately identify the voice, she later realized that it belonged to Clark.

At some point, Clark caught on fire and ran from the entryway. Another resident testified that he saw a man run from the apartment building with his back on fire.

Although he had been severely burned, Clark left the scene in his car and drove to the fire station, where he donned a fireman's bunker coat, hat and boots, and boarded the last fire engine to leave the station for the fire. Because Clark's injuries could not be seen underneath all that garb, the other firemen on the engine failed to notice that he was in no condition

to fight the fire. Once the engine arrived at the fire scene, however, Clark's injuries caused him to collapse on the ground screaming, "I'm on fire." Because they had just arrived at the fire, the other firemen were confused as to how Clark could have been burned so badly. He was treated on the scene by paramedics, including the female resident who recognized his voice. Clark was then taken to a local hospital, where he was treated for second and third degree burns.

As the fire came under control, some firemen were sent back to the station to begin cleaning their equipment and preparing for the next fire. One of these firemen was Scott Adam, who was in front of the station when Clark's brother and his father, Rex, arrived. Adam accompanied them to the back of the station where Clark's car was parked. Rex opened the car using keys that he had with him and removed from the floor of the backseat a shirt that was burned on the back. Adam noticed there were ashes on both the outside and the inside of the car. Adam took the shirt from Rex, inspected it, then placed it back inside the car. While his head was inside the car, Adam smelled gasoline.

Adam then notified the firefighters still on the scene at the apartment building. Fire Chief Michael Dosen sent a fire investigator and a state fire marshall to investigate Clark's car. With Rex present, they examined the shirt and the contents of the trunk. The car was then impounded and a search warrant obtained. Subsequent chemical tests on the shirt indicated the presence of gasoline residue. Gasoline residue is that part of the gasoline that is left behind on an object that has burned for a short time.

Further search did not reveal any gas can or other container near the fire. As a fireman, Clark had been exposed to training films which showed how an arsonist could use containers that would burn up in the fire without leaving much trace.

### I. The Search of Clark's Car

Clark contends that his car was searched by fire investigators without a warrant, in violation of the fourth amendment. As a result, Clark argues that none of the fruit of the illegal search should have been admitted at trial. Clark sought to suppress the results of the search through a pre-trial motion in limine. After holding a suppression hearing, the trial judge denied the motion. Clark's objection at trial was overruled.

Rather than address the merits of Clark's claim, the State argues that this issue is waived because of Clark's failure to include in the record on appeal a copy of the transcript of the suppression hearing. Clark has indeed failed to include a transcript. This failure raises a procedural problem that must be addressed before this Court can turn to the merits.

 Appellant bears the burden of presenting to this Court a record that is complete with respect to the issues raised on appeal. *Rondon v. State* (1987), Ind., 534 N.E.2d 719, *cert. denied*, — U.S. —, 110 S.Ct. 418, 107 L.Ed.2d 383 (1989). This burden includes the duty to ensure that the appellate court has before it a transcript of the trial proceedings or, where no transcript is available, an affidavit setting forward the content of the proceedings. Ind. Appellate Rule 7.2(A); *Dunbar v. State* (1974), 160 Ind.App. 191, 194–95 & 195 n. 3, 311 N.E.2d 447, 450–51 & 450 n. 3; *see also Ruetz v. State*, 268 Ind. 42, 373 N.E.2d 152, *cert. denied*, 439 U.S. 897, 99 S.Ct. 261, 58 L.Ed.2d 245 (1978) (substitution of affidavit in place of verbatim transcript not an unconstitutional denial of due process). Failure to do so can result in a waiver of the issue on appeal. *Rondon*, 534 N.E.2d at 729. Waiver is not, however, an automatic result. Indiana appellate courts may also order up the missing part of the record. A lengthy sentence and a strong likelihood of success on the merits would suggest that the remaining record should be ordered.

In this case, we see no need to order a transcript of the suppression hearing. Although the appellant was sentenced to a substantial term, he has little likelihood of success on the merits of his fourth amendment claim. Under the fourth amendment

to the United States Constitution, warrantless searches by the government are per se unreasonable, *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The remedy for an illegal warrantless search is the suppression of the evidence obtained from the search. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Although the police in this case eventually obtained a search warrant, several searches of Clark's car were made before any warrant was obtained. These warrantless searches must first survive constitutional scrutiny if the evidence they revealed is to be admitted into court.

The first search of Clark's car was performed by his father, not by a government official. Even though fireman Scott Adam was present at this search, the facts clearly show that he did not initiate it. Searches performed by non-governmental actors are not controlled by the fourth amendment. *Sizemore v. State* (1985), Ind., 483 N.E.2d 56. The subsequent warrantless searches of the car, however, were performed by arson investigators in furtherance of their criminal investigation. Without the support of a warrant, these governmental searches can survive scrutiny only if they fall within one of the few exceptions to the warrant requirement. *State v. Buxton* (1958), 238 Ind. 93, 148 N.E.2d 547. Consent is one exception. *Schneckloth,* 412 U.S. at 219, 93 S.Ct. at 2043. Here, the evidence strongly suggests that Clark's father consented to the searches. Consent by a third party is valid if that party has a sufficient relationship to the place searched; we conclude that Clark's father did have a sufficient relationship to Clark's car. *Cf. Jackson v. United States,* 404 A.2d 911, 920–21 (D.C. 1979) (consent obtained from husband of registered owner of car validated warrantless search of automobile; husband had a sufficient connection to the car). None of the warrantless searches appear to have violated the fourth amendment. Accordingly, the trial court properly declined to suppress the fruits of the searches.

## II. Scope of Expert Testimony

Clark asserts that the trial court erred in limiting the scope of his expert witness's testimony. Clark presented to the jury the testimony of Neil Rubin, a retired New York City fire marshall. Rubin testified about the nature of arson fires started with a gasoline accelerant. He stated that in this case one gallon of gasoline was poured in the entryway and began to evaporate, filling the closed entryway with gasoline vapors. Rubin testified that the gasoline would have exploded upon ignition, instantly creating temperatures above 2000 degrees Fahrenheit. Rubin further testified without objection that anyone burned in such an explosion would "lose all facial hair, eighty percent of the time your ears are burnt off, and if you happen to be unfortunate and take a deep breath, you'll sear your lungs and it is almost always fatal." Record at 775. Clark's attorney then asked Rubin a series of questions intended to distinguish Clark's burns from those likely to be caused by such a gasoline vapor explosion. The State objected on grounds that Rubin was not a medical doctor and therefore could not testify as to Clark's burns. The court sustained the objection.

Clark argues on appeal that Rubin, although not a medical doctor, was competent to testify about the probable cause of Clark's burns. In support, Clark argues that medical doctors should not be allowed to monopolize the field of expert evidence about burns. Clark also points out that as a result of his own indigency, his family pooled its resources to pay for Rubin to testify at trial, but could not have afforded to pay both a fire expert and a medical expert. The trial court denied Clark's request for public funds to hire expert witnesses, a request Clark says should have been granted under *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (due process requires public funds to pay for a psychiatrist when insanity is an indigent defendant's only defense in a capital case). In light of that denial, he argues that the court should have afforded his sole expert considerable latitude.

In response, the State argues only that Clark has waived this issue by failing to make an offer of proof at trial.

■ The State is correct that an offer of proof is generally required in order to preserve on appeal a claim that the court improperly excluded evidence at trial. *See, e.g., French v. State* (1980), 273 Ind. 251, 258, 403 N.E.2d 821, 826. The offer to prove permits an appellate court to assess whether the erroneous exclusion of particular evidence caused the offering party any prejudice.

■ When the content of the excluded evidence is already on the record, however, such a review can be undertaken. In this case, defense counsel asked Rubin whether Clark's skin looked like the skin of a man who had been exposed to a gasoline vapor explosion, and he answered, "No.... There would be extensive scarring. Very deep burns. Severe burns almost to the bone. It takes years of grafting." Record at 783. The State objected, and the trial court struck Rubin's answer. Clark's attorney then attempted to get at the answer in a variety of other ways. The State objected to each subsequent question, and the court sustained each objection. It was not necessary for Clark to make an offer of proof after each objection was sustained because the substance of Rubin's testimony was already on the record as a result of his answer to the first question. Thus, Clark's failure to make a formal offer of proof does not prevent this Court from reaching the merits of his claim.

Turning to the merits, this Court's standard of review is well settled. The determination of whether a witness is qualified to testify as an expert witness lies within the sound discretion of the trial court, and its decision will not be set aside unless there is manifest abuse of discretion. *Niehaus v. State* (1977), 265 Ind. 655, 359 N.E.2d 513, *cert. denied,* 434 U.S. 902, 98 S.Ct. 297, 54 L.Ed.2d 188 (1977); *see also Martin v. Roberts* (1984), Ind., 464 N.E.2d 896. An expert may be allowed to testify if the subject matter of the testimony is beyond the understanding of a layman, and if the expert has sufficient skill and knowl-

edge in the field to aid the trier of fact in its search for the truth. *Martin,* 464 N.E.2d at 901.

Because the specific effect of arson fires on humans and buildings is beyond the understanding of laymen, expert testimony on the subject would be helpful to the jury. Rubin appears to have had sufficient skill and knowledge in the field of arson investigations. Testimony at trial revealed that an arson investigator normally determines the cause of a fire by looking at its effects. An arson investigator may certainly use his contemporaneous observations of the inanimate objects consumed in the fire to form an opinion about the cause of a fire. For example, in this case, "spalling" of cement, "alligatoring" and other changes in the physical structure of the apartment building were often referred to as characteristic signs of an accelerated arson fire. Likewise, an arson investigator may observe the contemporaneous burns of persons injured in the fire, and reach conclusions from those observations, even though the arson investigator is not a medical doctor. *Cf. Borden v. Cyphers* (1985), Ind.App., 486 N.E.2d 635 (non-medical doctor permitted to testify regarding effects of polyvinyl chloride fumes on the human body). The record in this case shows that Rubin often traveled to hospitals and morgues to examine persons who had been burned in fires and that he relied upon these observations in determining the cause of fires.

■ This is not to say, however, that the limitation placed on Rubin's testimony by the trial court was an abuse of discretion. Rubin testified without objection as to the immediate effects of a gasoline vapor explosion on the human body. Record at 775–80. The State's objections to the questioning began only when Clark's attorney asked Rubin to examine the *current* condition of Clark's burns at the time of trial. Clark had been burned nearly *nine months* before the trial. In those nine months, he had been hospitalized and treated for the burns. Clark's attorney did not establish that Rubin was capable of relating a nine-month-old healed or healing burn back to its original appearance, let alone all the

way back to its cause. Absent some demonstration that Rubin was qualified to testify about the treatment and healing of human skin, it was rational for the trial court to conclude that such matters were not within his expertise.

■ Moreover, the excluded testimony was cumulative. Rubin had already testified about the probable effects of a gas vapor explosion on the human body, and several witnesses had described the extent of Clark's burns. There was ample evidence in the record to show that Clark did not exhibit those injuries that Rubin testified were typical of a gas vapor explosion. Clark's hair was singed but intact, his ears were burned, but not burned off, and his facial hair and nasal hair were singed but not burned off. The trial court correctly allowed all of these facts into evidence; it merely refused to allow Rubin to contrast the burns one would likely receive in a gas vapor explosion with the appearance of Clark's burns nine months later. The contrast Clark's counsel wanted to make through Rubin was obvious to a layperson and did not require testimony from an expert. Clark's counsel was free to make the distinction at final argument, and did in fact do so. There is no doubt that the jury heard evidence on the defendant's theory that he could not have been present at the ignition of the fire because his burns were not consistent with burns usually suffered in the initial explosion of gasoline in a confined space. The jury rejected this theory, as it was free to do.

Because the excluded testimony on this point was cumulative and not demonstrably within Rubin's expertise, the trial court's decision to limit Rubin's testimony was not an abuse of its discretion.

### III. Sufficiency of the Evidence

Clark argues that there was insufficient evidence to support a conviction on either the arson charge or the felony murder charge. He argues that the State's evidence was insufficient to prove either identity or intent.

■ In reviewing sufficiency claims, this Court does not weigh the evidence or judge credibility. It is constrained to consider only the evidence most favorable to the State, together with all reasonable and logical inferences to be drawn from it. The verdict will not be overturned if there is substantial evidence of probative value to support the conclusion of the jury. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670.

■ The evidence shows that Clark had been drinking before the fire broke out. Prior to the fire, a man who looked very similar to Clark was seen in an entryway not far from the fire's location. Apparently drunk, he knocked on a resident's door and then abruptly left when the resident answered. It is reasonable to infer that this man was Clark. Shortly afterwards, a gallon of gasoline was dumped in a nearby entryway and ignited. Soon after that, a witness heard a voice she later recognized as Clark's yelling "fire." At some point, Clark was burned in the fire. His back was severely burned. A resident observed a man running from the entryway with his shirt in flames. Clark's charred shirt was found inside his car, which contained ash both inside and outside the car. In addition, chemical analysis revealed that the shirt had gasoline residue on it. The interior of Clark's car smelled of gasoline a few hours after the fire began.

These facts and the inferences to be drawn from them are sufficient to support the conclusion that Clark was the arsonist. Although mere presence at the scene of the crime is not sufficient by itself to support a guilty verdict, it is a circumstance that the jury may consider in determining the defendant's guilt. *Mitchell v. State* (1990), Ind., 557 N.E.2d 660. In conjunction with other circumstantial evidence tending to show participation in the crime, evidence that the defendant was present at the scene may be sufficient to support a conviction. *Id.* The jury's conclusion that Clark was the arsonist is supported by substantial evidence of probative value.

■ There is also sufficient evidence to establish the requisite intent for both arson and felony murder. The requisite intent for the crime of arson is "knowingly or

intentionally," and the intent to commit felony murder is that required for the underlying offense. Ind.Code § 34–43–1–1. Intent can be proved from the circumstances surrounding the crime. *Mitchell,* 557 N.E.2d at 664. Pouring a gallon of gasoline inside a residential apartment building in the middle of the night and igniting it is sufficient circumstantial evidence of intent to commit arson.

The defendant's attack on the sufficiency of the evidence of intent fails for another reason: the defendant stipulated at trial that the fire in this case was intentionally set. Record at 198. "Once a stipulation is entered into between the parties it is the generally accepted rule that the facts so stipulated are conclusive upon both the parties and the tribunal. It has been held, however, that a stipulation of facts will not be construed to admit facts which were obviously intended to be controverted." *Lewis v. State* (1985), Ind.App., 482 N.E.2d 487, 492 (quoting *Faught v. State* (1974), 162 Ind.App. 436, 441, 319 N.E.2d 843, 847 (citations omitted)). There is no indication in this case that the defendant attempted to contest the issue of intent at the trial.

The proof of identity, the evidence showing the fire was set, and the stipulation are more than sufficient to sustain both convictions.

We affirm the judgment of the trial court.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.