In re ELI LILLY & COMPANY, PROZAC PRODUCTS LIA-
BILITY LITIGATION.

Howard BROTMAN

v.

ELI LILLY & CO.

Debra L. COHEN

v.

ELI LILLY & CO.

Susan HARMON, et al.

v.

ELI LILLY & CO.

MDL Docket No. 907.
Nos. IP 91–1365–C to IP 91–1367–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

April 17, 1992.

Leonard L. Finz, Law Offices of Leonard L. Finz, New York City, George W. Murgatroyd, III, Kananack, Murgatroyd & Baum, Los Angeles, Cal., for plaintiffs in all three cases.

G. Terry Hawkins, Morris, Silverthorn & Dutton, Louisville, Ky., liaison counsel, Robert K. Stanley, Baker & Daniels, Indianapolis, Ind., for defendant Eli Lilly & Co.

## ENTRY

DILLIN, District Judge.

This matter comes before the Court on three nearly identical motions filed in three of the cases transferred to this Court for pretrial proceedings by the Judicial Panel on Multidistrict Litigation. These motions were originally filed in the transferor courts and were still pending, at least in part, at the time of transfer. For the following reasons, the Court grants in part and denies in part the motions.

### Background

In all the actions consolidated in this Court under MDL Docket No. 907, the plaintiffs allege that they, or their decedents, were harmed when they took an anti-depressant drug known as Prozac, whose active ingredient is fluoxetine hydrochloride. Eli Lilly & Co. (Lilly), the sole defendant in all these actions, manufactured and marketed this drug, which is FDA-approved and available only by prescription.

In three cases transferred to this Court from federal courts in California—*Brotman, Cohen,* and *Harmon* —Lilly moved to dismiss several counts of the complaints pursuant to Federal Rule of Civil Procedure (FRCP) 12(b)(6) or, in the alternative, for a more definite statement pursuant to FRCP 12(e) and 9(b). In two of the cases, *Brotman* and *Cohen,* which were already consolidated for trial as related cases before the transfer to this Court, the transferor court did not have a chance to rule on the motion before the cases were transferred. In the third, *Harmon,* the transferor court had ruled on some aspects of the motion and had stayed a ruling on other aspects of the motion pending further briefing by the parties, but the case was transferred before that briefing occurred. Finally, in yet another case transferred to this Court from California, *Walnum,* No. IP 91–1368, the transferor court ruled on all aspects of a virtually identical motion before transfer, albeit without stating its reasons.

### Discussion

In ruling on a motion to dismiss under FRCP 12(b)(6), the Court must accept all factual allegations in the complaint as true and must liberally construe the complaint in favor of the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404, 416–17 (1969). Furthermore, "[a] complaint should be dismissed for failure to state a claim only if it appears beyond doubt that the plaintiff is unable to prove any set of facts that would entitle the plaintiff to relief." *Doe ex rel. Doe v. St. Joseph's Hosp.,* 788 F.2d 411, 414 (7th Cir.1986). Only the pleadings are to be considered in resolving a 12(b)(6) motion, except that material submitted as part of the complaint may also be considered. 2A Moore's Federal Practice ¶ 12.07[2.–5], at 12–67 to 12–68 (1991) (Moore's); *accord Griswold v. E.F. Hutton & Co.,* 622 F.Supp. 1397 (N.D.Ill.1985).

When a case is transferred by the Judicial Panel on Multidistrict Litigation,

the transferee court assumes control of all pretrial proceedings, and has the authority to rule on pretrial motions. 15 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3866 (1986) (collecting cases). In ruling on pretrial motions, the transferee court must apply the substantive law, including choice of law rules, that the transferor court would have applied. *Id.* at 623–24; 19 *id.* § 4506, at 80 (1982). With these principles in mind, the Court now addresses each aspect of Lilly's motions in turn.

## I. STATUTE OF LIMITATIONS

One of Lilly's arguments occurs only in its motion filed in the *Cohen* case. In *Cohen*, Lilly argues that the applicable statute of limitations bars the first and sixth counts of the complaint. Count I asserts a claim for "negligence/wrongful death under [California's Code of Civil Procedure] § 377." Count VI asserts a "survival action under [California] Probate Code § 573."

It is undisputed that California's Code of Civil Procedure (CCP) § 340(3) supplies the applicable statute of limitations. Section 340(3) states that "[a]n action for ... injury to or for the death of one caused by the wrongful act or neglect of another" must be brought "within one year."

The complaint in *Cohen* was filed in the United States District Court for the Central District of California on July 12, 1991. It alleges that the plaintiff's decedent first began taking Prozac in June, 1990. The complaint further alleges that the decedent took Prozac over a period of about two weeks, during which he "experienced and endured grievous pain and suffering and other compensable losses from the side effects of said drug in the form of inability to concentrate and work, confusion, distraction, insomnia, agitation, etc." The complaint then alleges that on July 12, 1990, the decedent hanged himself and died. The complaint claims that Prozac caused the injuries and death of the decedent.

■ It is clear that the plaintiff's wrongful death claim, contained in Count I of the complaint, is not barred by the one-year statute of limitations. That claim arose on July 12, 1990, the date of the decedent's death. In calculating the one-year limitation period under CCP § 340(3), California courts do not count the day on which the cause of action arose, but they do count the anniversary day. *Wixted v. Fletcher*, 192 Cal.App.2d 706, 13 Cal.Rptr. 734 (1961). Thus, the wrongful death action was timely filed on July 12, 1991, the one-year anniversary of the decedent's death.

■ Lilly further argues that Count VI's survival action and Count I, to the extent the latter states a negligence claim based on the decedent's pre-death injuries, are barred by the one-year statute. Lilly correctly points out that CCP § 377, California's wrongful death statute, precludes the award of damages in a wrongful death action that are recoverable in a survival action. Thus, all the plaintiff's claims for damages based on the decedent's "grievous pain and suffering and other compensable losses," which occurred, according to the complaint, in the two weeks preceding July 12, 1990, can only proceed under a survival theory. However, since a survival action is any action that the decedent might have brought had he lived but which California Probate Code § 573 allows the personal representative to bring after his death, Lilly argues that the survival claims accrued when the decedent suffered the underlying injuries, that is, according to the complaint, up to two weeks before his death on July 12, 1990. Because the complaint was not filed until July 12, 1991, Lilly concludes that the survival action, including any negligence claims in Count I, other than for wrongful death, were not filed within the one-year limitations period.

■ The Court does not find Lilly's argument persuasive. In *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 245 Cal.Rptr. 658, 751 P.2d 923 (1988), the California Supreme Court stated:

> [T]he common law rule, that an action accrues on the date of injury, applies only as modified by the "discovery rule." The discovery rule provides that the accrual date of a cause of action is delayed

until the plaintiff is aware of her injury and its negligent cause. A plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her.

*Id.* 245 Cal.Rptr. at 661, 751 P.2d at 926–27 (citations and footnote omitted). Rejecting the view that the statute does not begin to run until the plaintiff is aware of the specific facts establishing misconduct, the *Jolly* court held that the statute "begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing." *Id.* 245 Cal.Rptr. at 662, 751 P.2d at 927. Noting that "resolution of the statute of limitations issue is normally a question of fact," *id.* 245 Cal.Rptr. at 662, 751 P.2d at 928, the supreme court went on find that the defendant was entitled to summary judgment in *Jolly*, because the undisputed facts established through discovery showed that, well over a year before she filed suit, the plaintiff was aware of her injury and suspected that the defendant's wrongful conduct was its cause. *Id.* 245 Cal.Rptr. at 663, 751 P.2d at 929.

In the present case, the discovery rule demands the resolution of such factual issues as when the plaintiff, or her decedent, knew or reasonably should have known that she was injured, when either of them should have suspected that Prozac was the cause of the decedent's alleged injuries, and when either of them should have suspected wrongdoing. These issues cannot be resolved by looking at the complaint alone, as we must in ruling on a motion to dismiss under FRCP 12(b)(6).

Because it does not appear beyond doubt from the *Cohen* complaint that Counts I and VI of that complaint are barred by the applicable statute of limitations, Lilly's motion in *Cohen* is denied insofar as it seeks dismissal of Counts I and VI.

## II. STRICT LIABILITY

Lilly's second argument, raised and still not resolved in three cases—*Cohen, Brotman* and *Harmon* —is that the plaintiffs' strict liability claims (Count II in each case) are barred under California's substantive products liability law. Lilly seeks dismissal of these claims under FRCP 12(b)(6) or, in the alternative, a more definite statement of them. The plaintiffs in all three cases argue that the issue of whether the strict liability claims are barred cannot be resolved until the Court has determined which law applies to the plaintiffs' strict liability claims.

In the *Harmon* case, the transferor court, located in the Eastern District of California, agreed with the plaintiff. Accordingly, that court stayed its ruling on the motion to dismiss the strict liability claim, and ordered the parties to brief the choice-of-law issue. In the *Walnum* case, on the other hand, the transferor court, in the Southern District of California, after holding a hearing, denied Lilly's identical motion to dismiss the strict liability claim in that case. Unfortunately, the *Walnum* court did not state its reasons for the denial of the motion to dismiss Count II.

This Court finds that it can resolve the motions to dismiss the strict liability claims in *Cohen, Brotman* and *Harmon* without benefit of further briefing. The Court further finds that those motions ought to be granted in part and denied in part.

■ Lilly argues that California's recent statement of the standard for a products liability claim involving the manufacturer of a prescription drug eliminates the strict liability standard and hence that these claims ought to be dismissed. Its argument is based on *Brown v. Superior Court,* 44 Cal.3d 1049, 245 Cal.Rptr. 412, 751 P.2d 470 (1988), in which the California Supreme Court held "that a manufacturer is not strictly liable for injuries caused by a prescription drug so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution." *Id.* 245 Cal.Rptr. at 418, 751 P.2d at 482–83. In so doing, the supreme court adopted Comment k of Section 402A of the Second Restatement of Torts (Restatement

(2d)).[1] As the *Brown* court noted, Comment k, by focusing on what the manufacturer knew or should have known, imposes a negligence standard, rather than a true strict liability standard. *Id.* 245 Cal.Rptr. at 417 n. 4, 751 P.2d at 476 n. 4.

The plaintiffs object to the application of the *Brown* rule to this case in the absence of a determination by the Court that California law applies to the question of liability. Suggesting that Indiana law might apply and might be different, but that the choice-of-law issue cannot be determined at this stage of the case, the plaintiffs request deferment of a ruling on the motion to dismiss the strict liability claim.

The Court finds that there is no conflict between the California and Indiana rules concerning the standard for a strict liability claim involving a prescription drug. Hence the Court finds that the motion to dismiss the strict liability claim is not premature.

In *Ortho Pharmaceutical Corp. v. Chapman*, 180 Ind.App. 33, 388 N.E.2d 541 (1979), the Indiana Court of Appeals noted, first, that the Indiana Supreme Court had expressly adopted Section 402A of the Restatement (2d) and then went on specifically to approve the application of Comment k. The *Ortho* court concluded "that the duty to warn under Comment k does not arise until the manufacturer knows or should know of the risk," thereby recognizing Comment k as stating a negligence standard. *Id.* 388 N.E.2d at 548. *See also*

*Borden, Inc. v. Cyphers*, 486 N.E.2d 635, 637 (Ind.Ct.App.1985) (noting *Ortho* 's recognition of the Comment k exception but finding it inapplicable to the facts of the present case). Many other courts have adopted Comment k. *See Brown*, 245 Cal. Rptr. at 417, 751 P.2d at 476 (collecting cases); *see generally* Joanne Rhoton Galbreath, Annotation, *Products Liability: What Is an "Unavoidably Unsafe" Product?*, 70 A.L.R.4th (1989) (collecting cases that follow Comment k and noting differences among them).

*Ortho* was decided before the passage of Indiana's Product Liability Act, Ind.Code §§ 33–1–1.5–1 to 33–1–1.5–8 (1978 Act), which went into effect on June 1, 1978, and which would govern the present case if Indiana law were found to apply. The key portion of the 1978 Act, Ind.Code § 33–1–1.5–3, traces almost exactly the language of Restatement (2d) Section 402A, and "[c]learly, the legislature intended to incorporate the common law as it existed at the time of the adoption of the statute to the extent it was consistent with the statute." *FMC Corp. v. Brown*, 526 N.E.2d 719, 729 (Ind.Ct.App.1988), *aff'd*, 551 N.E.2d 444 (Ind.1990) (adopting the opinion of the court of appeals). Moreover, the Indiana Supreme Court stated in *Koske v. Townsend Engineering Co.*, 551 N.E.2d 437 (Ind.1990), that to determine whether a preexisting concept developed in the common law of strict liability survives the 1978 Act,

---

**1.** That Comment provides:

*Unavoidably unsafe products.* There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidably high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the pre-

scription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

Restatement (Second) of Torts § 402A cmt. k (1965).

a court must ask whether the 1978 Act "by express terms or by unmistakable implication made changes in the preexisting common law," *id.* at 442. In the present case, therefore, the question for the Court is whether the clear intent of the 1978 Act was to reject Comment k.

The heart of the 1978 Act is the provision modelled on Section 402A of the Restatement (2d) that makes sellers liable for injuries caused by products sold "in a defective condition unreasonably dangerous to any user." Ind.Code § 33–1–1.5–3. Since Comment k merely provides a gloss on the meaning of "unreasonably," *see supra* note 1, and the 1978 Act gives no indication that the legislature intended to exclude the Comment k gloss, which had been expressly approved in the *Ortho* case, we must conclude that the 1978 Act was intended to incorporate the common law rule contained in Comment k.

While we find that both California and Indiana adhere to Comment k, that is, to a negligence standard in certain products liability cases based on warning defects, we note that there appears at first glance be a difference in the application of that standard in the two states. In the *Brown* case, the California Supreme Court announced a blanket rule in which the negligence standard of Comment k would apply to all prescription drug manufacturers. *Brown* further rejected the view that Comment k applies only to those prescription drugs found, on a case-by-case basis, to be "unavoidably dangerous." *Brown*, 245 Cal. Rptr. at 418, 751 P.2d at 481–83.

In *Ortho*, on the other hand, the Indiana Court of Appeals interpreted the language of Comment k that restricts its applicability to "unavoidably unsafe products" as meaning that "the question is whether marketing of the product is justified in light of the known risks," which "involves balancing the public interest in the availability of such a product against the attendant risks." *Ortho*, 388 N.E.2d at 545. The *Ortho* court went on to state that it had "no difficulty in finding that oral contraceptives come under the protection of Comment k," despite their potential danger, in

view of the fact that "the public benefits from such a convenient and highly effective contraceptive." *Id.* From this language, it could be argued that Indiana takes the view that manufacturers of prescription drugs are not automatically entitled to the benefit of Comment k, but that a balancing test must be applied on a case-by-case basis to determine if the product is "unavoidably unsafe."

Upon further reading of *Ortho*, however, it becomes clear for several reasons that the court in that case understood Comment k to apply to *all* prescription drugs, not just oral contraceptives. First, the court's risk/benefit analysis is conclusory and extremely brief. Second, as support for its conclusion that the oral contraceptive at issue in *Ortho* was "unavoidably unsafe," the court cited other decisions involving oral contraceptives in which the deciding courts did not perform a risk/benefit analysis but rather stated the rule of Comment k in terms showing it to be applicable to all prescription drugs. Third, the *Ortho* opinion itself later declares that the Restatement (2d) states an exception to strict liability for "prescription drugs" generally. *Id.* at 547.

Moreover, even if we are wrong in our conclusion that Indiana would treat all prescription drugs as "unavoidably unsafe" within the meaning of Comment k, we are convinced that under California's "comparative impairment" approach to choice-of-law issues, the California interpretation of Comment k would apply in this case. We also do not believe that further briefing or development of this case would affect the choice-of-law analysis.

■ Under California's approach to choice of law, the burden is on the party seeking to invoke the law of a foreign state to show that the foreign state's law should displace California law. *Bernhard v. Harrah's Club*, 16 Cal.3d 313, 128 Cal.Rptr. 215, 546 P.2d 719, *cert. denied*, 429 U.S. 859, 97 S.Ct. 159, 50 L.Ed.2d 136 (1976). The analysis proceeds in three steps:

(1) determination of whether the potentially concerned states have different laws, (2) consideration of whether each

of the states had an interest in having its law applied to the case, and (3) if the laws are different and each had an interest in having its law applied (a 'true conflict'), selection of which state's law to apply by determining which state's interest would be more impaired if its policy were subordinated to the policy of the other state.

*Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App.3d 605, 236 Cal.Rptr. 605, 608, *review denied* (1987).

■ In this case, we will assume for purposes of the first step that California and Indiana law differ as to whether Comment k applies to all prescription drugs or only to those determined on a case-by-case basis to be "unavoidably unsafe." At step two, however, we find that Indiana would not have a real interest in applying its interpretation of "unavoidably unsafe." This is because the purpose of the case-by-case approach that we have attributed to Indiana is to assure greater protection to injured consumers of prescription drugs by limiting the applicability of Comment k to fewer than all prescription drugs and hence making strict liability more widely applicable than under California's blanket rule. Since the complaints in *Cohen, Brotman,* and *Harmon* allege that in each case the plaintiff was a resident of California, and since the plaintiffs' briefs further allege that the plaintiffs were residents and citizens of California and that they were injured in California, it is apparent that Indiana would have no interest in the application of the more pro-plaintiff rule to these cases, in which the plaintiffs have no connection to Indiana and the Indiana connections all involve the business of the defendant, Lilly. Thus, we find that these cases would not present a "true conflict" with respect to the varying interpretations of "unavoidably unsafe" and that California's blanket rule would apply under California's choice of law rules, without our having to reach step three of the analysis.

For all these reasons, we agree with Lilly that Comment k, as interpreted in the *Brown* case, is the applicable rule of law governing the strict liability counts in the plaintiffs' complaints in *Cohen, Brotman* and *Harmon* (Count II in each case). Having thus limited the plaintiffs' theory of recovery in strict liability, we find it unnecessary to dismiss those counts in their entirety. Instead, we grant the portions of Lilly's motions that seek dismissal of Count II in the three cases, insofar as those counts seek recovery under a theory of strict liability other than that described by Comment k as interpreted in the *Brown* case; however, we deny the portions of the motions that seek dismissal of Count II in each case insofar as those counts seek recovery under the Comment k theory espoused in *Brown*. Furthermore, in light of our ruling on the motions to dismiss with respect to the strict liability claims, we deny as moot Lilly's alternative motions for a more definite statement of those claims.

In the absence of the benefit of the *Walnum* court's reasons for denying Lilly's motion to dismiss the strict liability count in that case, and in the interests of uniform pretrial proceedings in this Court, we will interpret that denial to impose the same limitations on the strict liability claim in *Walnum* as we impose today on the strict liability claims in *Cohen, Brotman,* and *Harmon.* Any disagreement the parties in the *Walnum* case may have with this interpretation of the transferor court's ruling should be raised with that court upon return of *Walnum* to it for trial.

### III. BREACH OF EXPRESS AND IMPLIED WARRANTY

In *Walnum, Harmon, Brotman* and *Cohen,* which, as we have said, are all cases filed in California and involving Californian plaintiffs, Lilly moved to dismiss the plaintiffs' claims of breach of express and implied warranties (Counts III and IV of each complaint). Lilly also based this portion of its motions on the California Supreme Court's decision in the *Brown* case, which held that a plaintiff who brings a design defect claim against a prescription drug manufacturer may not also bring claims for breach of express and implied warranties. 245 Cal.Rptr. at 426 & n. 14, 751 P.2d at 484 & n. 14. The supreme court reasoned:

We have concluded above that a manufacturer of prescription drugs is not strictly liable for injuries caused by ... a [design] defect that is neither known nor knowable at the time the drug is distributed. To hold nevertheless that the manufacturer's representation, express or implied, that a drug may be prescribed for a particular condition amounts to a warranty that it is "fit" for and will accomplish the purpose for which it is prescribed, and to allow an action for personal injury for the breach of such warranties, would obviously be incompatible with our determination regarding the scope of a drug manufacturer's liability for product defects.

*Id.* 245 Cal.Rptr. at 426, 751 P.2d at 484.

The transferor court in the *Walnum* case granted Lilly's motion to dismiss the counts that sought relief for breach of express and implied warranty, and dismissed those counts without leave to amend. The transferor court in the *Harmon* case, on the other hand, deferred its ruling on the motion to dismiss those two counts until the parties had briefed the choice-of-law issue, which they did not have a chance to do before the case was transferred to this Court. There has been no ruling of any kind on these issues in the *Cohen* and *Brotman* cases. In all these cases, the plaintiffs have urged that the ruling on dismissal of the warranty claims be deferred until the choice-of-law issue has been resolved.

Indiana, the only other state whose law the plaintiffs conceivably could attempt to invoke in these cases, holds that the theory of breach of implied warranty in tort is indistinguishable from that of strict products liability, and hence that when both claims are asserted the claim for tortious breach of an implied warranty should be dismissed as duplicative. *Thiele v. Faygo Beverage, Inc.,* 489 N.E.2d 562, 576–84 (Ind.Ct.App.), *transfer denied* (1986). Indiana also holds, however, that its products liability statute does not supplant claims for breach of implied and express warranties that are brought under the Uniform Commercial Code [UCC], which Indiana has adopted at Ind.Code §§ 26–1–

1–101 *et seq.* See, *e.g., Thiele,* 489 N.E.2d at 583 (noting, in an opinion based on the unamended version of the 1978 Act, which stated that the Act "does not apply to actions arising from or based upon any alleged breach of warranty," Ind.Code § 33–1–1.5–1 (1982), that breach of warranty claims under the UCC are not affected by the 1978 Act); Harold Greenberg, *Vertical Privity and Damages for Breach of Implied Warranty Under the U.C.C.: It's Time for Indiana to Abandon the Citadel,* 21 Ind.L.Rev. 23, 44 (1988) (citing the 1983 amendment, which omits the express exclusion of breach of warranty claims and merely states that the Act "governs all actions in which the theory of liability is strict liability in tort," Ind.Code § 33–1–1.5–1 (1988), for the proposition that "[t]he Product Liability Act does not supersede the [UCC], ... so actions for personal injuries resulting from a breach of any [UCC] warranty are still available.").

Although we note that Indiana has not addressed the specific question faced by the California Supreme Court in *Brown,* that is, whether in cases governed by Comment k breach of warranty claims under the UCC should be disallowed, we will assume *arguendo* that Indiana, unlike California, would permit breach of warranty claims brought under the UCC in a suit which also seeks recovery under a products liability theory against a drug manufacturer subject to the Comment k exception. We conclude, however, that under California's "comparative impairment" approach to choice-of-law issues the California rule barring warranty claims would apply.

■ We have set forth above the three steps of California's approach. Having found an apparent conflict in Indiana's and California's rules concerning the survival of warranty claims, we proceed to step two, which requires us to pinpoint the policies underlying each rule. In this case, California's policy is clearly to protect drug manufacturers from excessive and uncertain litigation and thereby encourage the development of new drugs for the benefit of the public at large. Indiana's policy, on the

other hand, in imposing the rule we have attributed to it, would be to ensure compensation of individuals injured by defective drugs. Since the plaintiffs in *Harmon, Brotman* and *Cohen* are all Californians, the latter policy is not implicated by these cases, which does not involve any Indiana victims whom Indiana's rule would be designed to protect.

Thus, because we find that the varying rules concerning UCC warranty claims in a products liability suit do not present a "true conflict," we find that the plaintiffs have not overcome their burden of showing that the California rule should not apply. Accordingly, we find that that rule does apply and, as did the transferor court in the *Walnum* case, we grant Lilly's motions insofar as they seek dismissal of the plaintiffs' claims of breach of express and implied warranty (contained in Counts III and IV, respectively, in each case), without leave to amend.[2]

## IV. FRAUD CLAIM

■ Lilly seeks dismissal of the plaintiffs' fraud claims on the ground that they fail to satisfy the particular-pleading requirement of FRCP 9(b). In the alternative, Lilly moves for a more definite statement of the fraud claims. This aspect of Lilly's motions has been ruled on in *Walnum* and in *Harmon*. In *Walnum*, the transferor court denied the motion to dismiss the fraud count. In *Harmon*, however, the transferor court granted Lilly's motion with respect to a virtually identical fraud count, without prejudice. Only *Cohen* and *Brotman* still require a ruling on this aspect of Lilly's motions.

The requirements for pleading fraud are governed by FRCP 9(b), even in a diversity case in which a state supplies the substantive law of fraud to be applied. That rule provides: "In all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge, and other condition of

mind of a person may be averred generally." Fed.R.Civ.P. 9(b).

Federal courts have generally interpreted this language to require that the pleader of fraud "specify the time, place, and content of any allegedly false representation, the fact misrepresented, the identity of the perpetrator, and what was obtained or given up as a consequence of the fraud." 2A Moore's, *supra*, ¶ 9.03[1], at 9–23; *accord Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985); *Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 747 F.2d 384, 405 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). However, "[t]he courts have also been more lenient in sustaining pleadings where the transactions involved are complex or cover a long period of time, and in cases where the fraud was perpetrated on a party other than the plaintiff." 2A Moore's, *supra*, at 9–29 (footnotes omitted).

The Court finds that Count V (the fraud count) in the *Cohen* and *Brotman* complaints states all the elements required of a fraud claim. In Paragraph 46 of the *Brotman* complaint and Paragraph 54 of the *Cohen* complaint, the plaintiffs specify the content of the allegedly false representation and the facts alleged to be misrepresented, as follows: "Defendants ... falsely ... represented ... that PROZAC was a drug that had been tested and found to be safe and effective for the treatment of depression." In Paragraphs 13 and 17 of the *Brotman* and *Cohen* complaints, respectively, which are incorporated by reference in Count V in each case, the plaintiffs specify the time (1987 through 1990 "and continuing") and the manner or place ("advertising, literature, detailmen, brochures and other materials") of the alleged misrepresentations. The complaints further allege that the defendants made these representations knowing them to be false, or with reckless disregard of whether they were false. *Brotman* Complaint ¶ 47, *Cohen* Complaint ¶ 55. Finally, the complaints allege that the plaintiffs and their doctors relied on the misrepresentations,

---

**2.** Because we do not believe that any further briefing or discovery would affect this analysis, we respectfully decline to follow the *Harmon* court's decision to permit further briefing on this issue.

and that as a result of this reliance the plaintiffs ingested Prozac and were injured.

These allegations satisfy the requirements of FRCP 9(b) under the circumstances of the present cases. Whatever further detail might otherwise be demanded is not required in these cases, in which the reliance was incurred principally by third parties (the doctors), rather than by the plaintiffs themselves, and in which the representations are alleged to have occurred over a period of several years. Under these circumstances, the plaintiffs cannot be expected to provide all details concerning the time and place of the alleged misrepresentations. Moreover, we find that Count V in both cases is sufficiently specific to apprise Lilly fairly of the charge and permit it to defend against the charge, which are principal considerations underlying FRCP 9(b).

For these reasons, the Court denies Lilly's motions insofar as they seek to dismiss Count V in the *Brotman* and *Cohen* complaints, or, in the alternative, for a more definite statement of Count V each case.

### Conclusion

For all the foregoing reasons, the Court rules as follows on the various aspects of the defendant's motions to dismiss or, in the alternative, for a more definite statement. It 1) DENIES the portion of the motion that seeks dismissal of Counts I and VI of the *Cohen* complaint; 2) GRANTS IN PART AND DENIES IN PART the portions of the motions that seek dismissal of Count II of the *Cohen, Brotman* and *Harmon* complaints, and DENIES AS MOOT the alternative motions in those cases for a more definite statement of Count II; 3) GRANTS the portions of the motions that seek dismissal of Counts III and IV of the *Cohen, Brotman* and *Harmon* complaints; and 4) DENIES the portions of the motions that seek dismissal of, or, in the alternative, a more definite statement of, Count V of the *Cohen* and *Brotman* complaints.