Darryl MAXWELL, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–9208–CR–611.

Supreme Court of Indiana.

Feb. 12, 1993.

**1366**

Kenneth T. Roberts, Roberts & Bishop, Indianapolis, for appellant.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Count I, Murder; Count II, Felony Murder; and Count III, Arson.

The facts are: Appellant and his cousin, Gregory Smith, the decedent in this case, and Christopher Williams were "just messing around" on the evening of March 3, 1991. In the course of the evening, appellant suggested they play a "bounty hunt game." They stopped at a store where appellant bought some play handcuffs and duct tape then because the gas tank of the automobile showed empty they stopped at a filling station where they bought gasoline. They also put gasoline in a Gatorade bottle that the decedent kept in his car because it sometimes stalled, and the gasoline was needed to pour into the carburetor to restart the engine.

The three men then drove to a location near an apartment building where they began to play with the handcuffs and the bottle of gasoline. Here, the story of appellant and the story of Williams differ considerably. In his statement to the police upon his arrest and in his testimony at trial, appellant claimed that there was never any intent to hurt anyone. He contends they merely were playing.

Appellant claims they first handcuffed Williams and he was able to unfasten the handcuffs. They then handcuffed the decedent, who apparently was unable to unfasten the handcuffs. However, Williams' testimony was that he was never handcuffed, that he and appellant handcuffed the decedent, and after the decedent was handcuffed, appellant also applied duct tape over the decedent's eyes and nose. Williams testified that at this time he got into the automobile where he stayed.

However, appellant, in his statement and in his testimony, stated that after the decedent was handcuffed and the tape was placed over his eyes and nose he stayed on his feet, that appellant threw the bottle of gasoline, that it struck Williams' foot and that the cap came off and splashed gasoline on the pants leg of the decedent. Appellant stated that he then began chasing Williams around flicking a cigarette lighter at him. Then as he stood near the decedent flicking the cigarette lighter the decedent kicked at him thus setting his trousers afire. This frightened appellant and he tried to put out the fire, but when he was unsuccessful, he got in the car and left the scene. He admits he did not try to summon any aid for the decedent nor did he notify authorities of what he claims to have been an accident.

Williams' testimony was that after he got back in the car the decedent was lying on the ground, and he saw appellant pour the gasoline from the bottle onto the legs of the decedent. He stated it was dark and he could not see whether appellant poured gasoline on any other part of the decedent's body. However, he said that after appellant poured the gasoline on the decedent, he returned to the car, obtained the cigarette lighter and went back, knelt down over the prostrate decedent and flicked the lighter several times until it ignited the decedent's clothing. Williams stated the appellant immediately jumped up, ran to the car, and they drove away. He stated that no attempt was made to put out the fire or to summon aid. The testimony of

the doctor who performed the autopsy was that the decedent had been covered by gasoline from his neck to just above his knees.

Williams testified that upon leaving in the car the defendant began to cry and stated that he did not mean to do it, that he loved the decedent and that the fire was an accident. However, after the fire, the men went about their social concerns as though nothing had happened, and in fact, appellant suggested to Williams that they use the decedent's car to go to a party the next evening. Williams testified that he by then was frightened of appellant, and he could not see how appellant could think about going to a party after what had occurred. Both Williams and appellant were charged with the decedent's death. On the witness stand, Williams stated that he was testifying under use immunity.

During the sentencing of appellant, the trial judge stated:

"Defendant having been found guilty of Murder, Felony Murder in Count Two, and arson in Count Three; the court finds Count Two and Count Three should be merged in the conviction for Count One."

The trial judge then proceeded to sentence appellant on the murder count only and imposed an enhanced sentence of sixty (60) years for reasons stated in his findings of fact as to the nature of the crime. He also enhanced the sentence because of appellant's prior record although he had no felony convictions as an adult.

■ Appellant claims the trial court erred in denying his motion to dismiss Counts II and III. Count I read:

"[D]id knowingly kill another human being, namely GREGORY SMITH, BY CONFINING GREGORY SMITH WITH HANDCUFFS AND TAPE, POURING A FLAMMABLE FLUID ON GREGORY SMITH AND IGNITING THE CLOTHING OF GREGORY SMITH, thereby inflicting fatal injuries upon GREGORY SMITH causing GREGORY SMITH to die on March 5, 1991 all of which is contrary to the form of the statute in such case made and provided, and

against the peace and dignity of the State of Indiana."

■ Count II charged appellant with felony murder in that he caused the death of Gregory Smith by committing the crime of arson. Count III charged appellant with arson by reason of his setting fire to the clothing of Gregory Smith. It is obvious from examination of the three Counts that Counts II and III in fact are included within the charge found in Count I. It is not error to charge included offenses. Error only occurs when a court attempts to sentence the defendant on the major offense and the included offense. *See Mimms, et al. v. State* (1957), 236 Ind. 439, 441, 140 N.E.2d 878.

Appellant cites several cases wherein this Court has held that where only a single homicide occurs, it is improper to sentence appellant to more than one offense growing out of the single murder. However, such did not occur in the case at bar. There was no reversible error in permitting the charges to stand. The only potential for reversible error was that the trial judge would sentence appellant on all three charges. This did not occur. As above set out, the trial judge correctly ruled that Counts II and III merged within Count I. The trial judge sentenced appellant only on Count I. *Bustamante v. State* (1990), Ind., 557 N.E.2d 1313.

In *Woods v. State* (1955), 234 Ind. 598, 605, 130 N.E.2d 139, 142, this Court stated:

"It is established law in this state that if a person is convicted and sentenced for an offense he may not also be convicted and sentenced for a lesser offense included therein. In other words, a crime may not be split up into parts such that the person may be found guilty of all the parts constituting a greater crime and sentenced also for lesser crimes included therein." (Citations omitted.)

In any crime which includes lesser offenses, whether they are charged or not, a jury may find the defendant guilty of one of the lesser offenses. *See* Ind.Code § 35–41–4–3; *Id.*

In the case at bar, the trial judge recognized this proposition of law and properly

stated that the included offenses merged into the greater and sentence was pronounced only on the greater charge of murder. There was no error.

■ Appellant contends the evidence was insufficient to sustain the verdict. He acknowledges that this Court does not reweigh the evidence nor judge the credibility of a witness, citing *Clark v. State* (1990), Ind., 562 N.E.2d 11, *cert. denied,* — U.S. ——, 112 S.Ct. 425, 116 L.Ed.2d 445. However, he then proceeds to argue that because Williams stated that after Smith caught fire appellant started crying and told him he did not mean to do it and because Williams also testified that as the situation progressed he thought it was all a game, the evidence is thus insufficient. However, appellant ignores the fact that Williams' version of what occurred when the burning took place differs greatly from appellant's version.

From Williams' testimony, the jury could deduce that for whatever reason appellant deliberately poured gasoline on the prostrate form of the victim and ignited it. The jury could further find appellant's intent from Williams' testimony that appellant immediately returned to the automobile and they left the scene without any attempt to aid the victim or to summon aid for him. We see ample evidence in this record to support the verdict of the jury.

■ Appellant claims the trial court's sentence was improper. Appellant contends the trial court did not give proper weight to various mitigating factors: 1) the defendant's age of 19; 2) undue hardship on appellant's supportive family; 3) appellant's remorse and the unique circumstances unlikely to ever be repeated; 4) that appellant has never been convicted of a felony; and 5) appellant is attempting to rehabilitate himself by pursuing his education and obtaining his G.E.D. In fact, the trial court did consider many of these factors in rendering its sentence.

Appellant cites *Bustamante, supra* for the fact that the court must weigh aggravating and mitigating circumstances in arriving at its decision. In *Bustamante*, this Court correctly recited the proper manner of sentencing, then found that the trial court had properly considered the circumstances. In the case at bar, the trial court in fact did comply with the mandates laid down in *Bustamante*. We find no error in the sentence imposed by the trial court.

We find no reversible error. The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and KRAHULIK, JJ., concur.